UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PATRICIA D. CARDILLO, :
Plaintiff, :
:
v. : CA 05-383 M
:
MICHAEL J. ASTRUE,[1] :
COMMISSIONER, :
SOCIAL SECURITY ADMINISTRATION, :
Defendant. :

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Patricia D. Cardillo ("Plaintiff") has filed a motion for summary judgment. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and any legal

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

error is harmless. Accordingly, based on the following analysis, I order that Plaintiff's Motion for Summary Judgment (Document ("Doc.") #10) ("Motion for Summary Judgment") be denied and that Defendant's Motion for Order Affirming the Decision of the Commissioner (Doc. #13) ("Motion to Affirm") be granted.

## Facts and Travel

Plaintiff was born in 1951 and was fifty years of age at the time of the hearing before the administrative law judge ("ALJ"). (Record ("R.") at 27, 159) She has the equivalent of a high school education and special training as a medical assistant, (R. at 27, 187), and has past relevant work experience as a medical technician and a certified nurse's assistant, (R. at 27, 182).

Plaintiff filed an application for DIB on May 17, 2000, alleging disability since November 24, 1997, due to a shoulder injury, anxiety, and depression. (R. at 26, 27, 159, 181) The application was denied initially and on reconsideration, (R. at 35, 36), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 141). A hearing was conducted on January 28, 2002, at which Plaintiff, represented by Attorney Albert Lepore, appeared and testified. (R. at 410, 414-25) An impartial vocational expert ("VE"), Louis Testa, also testified. (R. at 410, 426-32)

The ALJ issued a decision on April 29, 2002, in which he found that Plaintiff was not disabled and, therefore, not entitled to a period of DIB. (R. at 26-34) The Appeals Council denied Plaintiff's request for review on July 6, 2005, (R. at 15-18), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 15).

Plaintiff filed a Complaint (Doc. #1) in this Court on September 8, 2005. Defendant on April 14, 2006, filed his Answer (Doc. #7) to the Complaint. An Order (Doc. #8) referring the case to this Magistrate Judge was entered on April 17, 2006. On

June 26, 2006, Plaintiff's Motion for Summary Judgment (Doc. #10) was filed. Defendant's Motion to Affirm (Doc. #13) was filed on August 24, 2006.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is legally correct.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support h[is] conclusion.")). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *3 (S.S.A.) (quoting Richardson v. Perales and stating that "[t]he term [substantial evidence] is intended to have this same meaning in 20 CFR 404.1527(d)(2) ....").

(citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than sixty-five years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1521(a) (2007). A

---

[3] The ALJ found that Plaintiff met the non-disability requirements as of her alleged onset date and was insured for disability benefits through the date of the ALJ's decision. (Record ("R.") at 27, 32)

[4] Section 404.1521 describes "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one of the Commissioner's listed impairments; (4) whether she is able to perform her past relevant work; and (5) whether she remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, (R. at 27, 32); that Plaintiff's shoulder injury, anxiety, and depression were severe impairments but did not meet

---

Id.

or equal any listed impairment, (R. at 28, 32); that Plaintiff's allegations regarding her limitations were not totally credible, (R. at 30, 33); that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of light work with limited ability to maintain attention and concentration, (id.); that Plaintiff was unable to perform any of her past relevant work, (R. at 31, 33); that Plaintiff, based on her age, education, work history, and RFC, could be expected to make a vocational adjustment to work that exists in the national economy including employment as an automatic machine operator, small product assembler, and inspector, (R. at 32, 33); and, therefore, that Plaintiff was not under a disability, as defined by the Act, at any time through the date of the decision, (id.).

**Errors Claimed**

Plaintiff alleges: 1) that the ALJ failed to follow the proper standards for pain evaluation pursuant to Avery v. Secretary of Health and Human Services, 797 F.2d 19 (1st Cir. 1986), and Social Security Ruling ("SSR") 96-7p, Plaintiff's Memorandum in Support of her Motion for Summary Judgment ("Plaintiff's Mem") at 12; and 2) that the ALJ's decision to deny Plaintiff DIB is not supported by substantial evidence in the record because, among other reasons, the ALJ erred by not including Plaintiff's panic attacks in the hypothetical question which he propounded to the VE, id. at 16.

**Discussion**

**I. The ALJ's evaluation of Plaintiff's pain adequately complied with the requirements of Avery v. Secretary of Health and Human Services and SSR 96-7p.**

Plaintiff argues that the ALJ "failed to make adequate findings per Avery and [SSR] 96-7p concerning the credibility and consistency of [Plaintiff's] pain in his denial of benefits." Plaintiff's Mem. at 14. Plaintiff acknowledges that the ALJ

reviewed the medical evidence in his assessment of Plaintiff's pain, see id., but complains that the ALJ "fail[ed] to correlate the psychological factors affecting the plaintiff's complaints of pain and fail[ed] to mention the plaintiff's testimony with respect to the side-effects she experiences from pain medication." Id. Plaintiff additionally faults the ALJ for not mentioning the results of the consultative evaluation conducted by Harold R. Musiker, Ph.D.,[5] and "evidence of the plaintiff's on-going psychiatric problems after July 31, 2000 ...." Id. at 15. Plaintiff asserts that as a consequence of this failure "it is not possible to address his statement regarding his interpretation of 'reports of the treating and examining practitioners.'"[6] Id. (purportedly quoting the ALJ). Somewhat inconsistently (given her previous acknowledgment that the ALJ "review[ed] the medical evidence ...," id. at 14), Plaintiff claims the ALJ's "failure to address the medical evidence or identify that evidence which support[s] his conclusions violates Avery and 96-7p requirements that he make [findings] on the weight and credibility of all individual statements and give specific reasons for his findings on credibility," id. at 15.

Addressing Plaintiff's arguments in order, the record does not support her contentions that the ALJ failed to make adequate

---

[5] Plaintiff refers to "the consultative psychological evaluation conducted by Dr. Musiker ...," Plaintiff's Mem. at 15, and indicates that the evaluation is located at pages 326-44 of the record, see id. However, those pages contain the report of J. Stephen Clifford, Ph.D. The Court assumes that Plaintiff intended to cite to pages 300-13 where the mental consultative review completed by Harold R. Musiker, Ph.D., appears.

[6] This assertion is problematic because Plaintiff does not provide a citation for the ALJ's statement which she purportedly quotes, and the Court fails to find the statement in the decision. The failure to provide a page citation for a quote attributed to the ALJ is more than a minor inconvenience when the decision is nine pages long and largely single spaced.

findings as required by Avery and SSR 96-7p and/or that he failed to address the medical evidence or identify the evidence that supported his conclusions regarding Plaintiff's credibility. The Court initially notes that the ALJ recognized his obligation to consider the Avery factors[7] and SSR 96-7p. (R. at 28-29) Thereafter, the ALJ stated in part:

> [B]ased upon a thorough review of all of the evidence of record, the undersigned is persuaded that the claimant has impairments that could reasonably be expected to produce the symptoms she alleges. However, to the extent that the claimant alleges impairments so severe as to preclude the performance of all sustained work activity, the undersigned does not find her fully credible. No physician has concluded that the claimant's physical impairments prevent her from engaging in all sustained work activity. The undersigned finds that the claimant's complaints of constant and incapacitating pain are neither reasonably consistent with the medical signs and findings of record nor sufficiently credible as "additive" evidence to support a finding of disability. The discrepancies between her allegations and the objective medical record, supported by the assessments of both the DDS consultants and her own treating physicians, cannot be resolved in the claimant's favor based on this record. Before the expiration of twelve months from her

---

[7] The Avery factors are:

1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;

4. Treatment, other than medication, for relief of pain;

5. Functional restrictions; and

6. The claimant's daily activities.

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).

> date of onset, Dr. Green concurred that she could return to work in a light capacity [(R. at 250)], which the claimant did in fact do until she was laid off. Furthermore, there is no substantial evidence that the claimant's pain significantly interfered with her ability to maintain concentration and attention. Evaluating her pain within the guidelines of Social Security Ruling 96-7p, the Administrative Law Judge finds that the nature, duration and frequency of the claimant's pain resulted in only minimal actual functional limitation based on her own description of her daily activities and the treatment notes of her treating physician, Dr. Green[,] and from the Donley Center. Therefore, the Administrative Law Judge does not find the claimant's discomfort to be at a level of severity that would significantly erode her physical residual functional capacity.

(R. at 30)

As reflected in the above excerpt, the ALJ accurately noted that no physician believed that Plaintiff's physical condition prevented her from engaging in all work activity. See id. He pointed out that although Plaintiff claimed to be unable to work since November 24, 1997, (R. at 181), her own physician, Dr. Andrew Green, opined that she could work, (R. at 250). In fact, Dr. Green explicitly stated this on multiple occasions. (R. at 240, 244, 251, 252) His March 8, 2000, discharge note indicates that Plaintiff "will attempt to find other employment opportunities," (R. at 261), clearly implying that he believed her capable of some work.

In discussing Plaintiff's physical impairment, the ALJ cited the discrepancies between her allegations and the objective medical record and the fact that her allegations were not supported by the assessments of the DDS physicians or by her own treating physicians. (R. at 30) These points are supported by the record. The assessments of the DDS physicians, (R. at 97-105, 121-29, 286-94), the last of which was reviewed and concurred in by a medical consultant, (R. at 314-15), were all consistent with the physical RFC which the ALJ determined

Plaintiff possessed. Dr. Michael J. Hulstyn, who operated on Plaintiff's right shoulder in February of 2001, believed that she was able to return to light duty work as of March 16, 2001. (R. at 383) Dr. Hulstyn continued to hold that opinion in the months that followed. On June 15, 2001, he recorded that Plaintiff "continues to be capable of light work duty with restrictions on lifting and repetitive use of her [right] arm." (R. at 386) In discharging Plaintiff on August 2, 2001, Dr. Hulstyn wrote that he had discussed with her "that she is capable of light activities with a maximum lifting of 15 pounds ...," (R. at 387), and opined that Plaintiff "is capable of light duty work with restrictions as per the Donley Center," (id.). The latter reference appears to be to the June 25, 2001, Donley Center assessment by physical therapist Erin Blais. (R. at 379-80) Ms. Blais stated that Plaintiff "is functioning at the sedentary-light level of activity with a maximum lift of 15#." (R. at 379) Thus, in finding Plaintiff's allegations regarding her limitations not totally credible, the ALJ specifically referenced the assessments by the DDS physicians and the opinions of Dr. Hulstyn, Dr. Green, and Ms. Blais.

While the treatment notes of Plaintiff's primary care physician, Dr. Elizabeth Farnum, (R. at 109, 114, 118-19, 272-73, 276-77, 280-85, 405-09), reflect that Plaintiff complained of pain in her right shoulder, Dr. Farnum never opined that Plaintiff's physical incapacity prevented her from working. Read as a whole, Dr. Farnum's notes reflect that Plaintiff was suffering from stress and depression largely caused by situational circumstances. (R. at 280-85, 406-07) Although Dr. Farnum described Plaintiff's depression as severe, her assessment of Plaintiff's shoulder was that "[Plaintiff] has not regained full use of the shoulder." (R. at 285)

As for Plaintiff's complaint that the ALJ allegedly failed

to correlate the psychological factors affecting Plaintiff's complaints of pain, see Plaintiff's Mem. at 14, the ALJ specifically noted Plaintiff's contention that she was unable to work "because she is in constant pain and a depressed mood," (R. at 30). He cited her testimony that "her impairment causes her to be depressed and anxious due to the financial difficulties of not being able to work." (Id.) Moreover, the ALJ devoted an entire paragraph to the opinion of Dr. Stephen DiZio, (R. at 30), who performed a consultative examination of Plaintiff on July 13, 2000, (R. at 295), and diagnosed her as having major depression and panic disorder with agoraphobia, (R. at 298). Dr. DiZio's report recounted that Plaintiff had "stopped working because of a shoulder injury and developed marked anxiety because of her physical problems and the associated financial distress of being out of work." (R. at 295) While the ALJ gave Dr. DiZio's opinion little evidentiary weight,[8] his discussion of that opinion (as well as his specific reference to 20 C.F.R. § 404.1529, (R. at 29)), indicates that the ALJ was aware of the "psychological factors" which Plaintiff claims he failed to correlate. In the Court's view, the ALJ did not fail to correlate this evidence with Plaintiff's complaints of pain as she contends. Rather, the ALJ was aware of this evidence but found, nevertheless, that Plaintiff's complaints of constant and incapacitating pain were not consistent with the entire record.

For example, Plaintiff told Dr. DiZio that she spent much of her time either at home or at the library. (R. at 297) At the hearing, she testified that she does "a lot of reading," (R. at 421), and that she picks up a few books at the library "maybe

[8] The ALJ found that Dr. DiZio's assessment of the severity of the limitations on Plaintiff's activities of daily living were inconsistent with the record as a whole, including the reports of Plaintiff's treating physician and the testimony of Plaintiff. (R. at 30)

once every couple weeks ...," (R. at 422). She also testified that she left the house "[p]robably like three times a week, if I have to go take a prescription or go to the doctor, whatever I have got to do." (R. at 421-22) When asked if she went out socially, Plaintiff responded that "usually we[9] go to the show maybe once a week, maybe sometimes a show." (R. at 425) Plaintiff related that she drove, (R. at 421), went to the market (R. at 422), and sometimes walked "maybe like a mile," (R. at 424). She stated that she did housework and fixed dinner, although she had assistance with these tasks from her boyfriend. (R. at 420)

As for Plaintiff's claim that the ALJ failed to mention her testimony with respect to the side-effects she experiences from pain medication, the ALJ questioned Plaintiff on this point. (R. at 423-24) Plaintiff responded that the medications caused drowsiness and indicated that because of this she takes them when she goes to bed. (R. at 424) There was no suggestion that the pain medications interfered with her ability to drive or to read extensively.[10] (R. at 421-22) Given these circumstances, it was not necessary for the ALJ to mention this factor specifically in his decision. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). To the extent the omission may have constituted an error, the Court deems it harmless.[11]

---

[9] By "we," (R. at 425), Plaintiff presumably means she and her boyfriend, (R. at 420).

[10] Plaintiff testified that the codeine makes her "high" and she has to be careful when she takes it. (R. at 424)

[11] The ALJ noted the nature, location, onset, duration, frequency, radiation, and intensity of Plaintiff's pain. (R. at 29-30) The ALJ also listed Plaintiff's medications, (R. at 30); described her daily activities, noting that she "performs household chores, prepares meals, shops for groceries, with occasional help from her son, drives, and goes for walks," (id.), and that "she goes to the library and, about once per week, to a show or to the

With regard to Plaintiff's complaint that the ALJ did not mention Dr. Musiker's consultative psychological evaluation, Plaintiff's Mem. at 14-15, Plaintiff does not specifically identify any finding by Dr. Musiker which was inconsistent with the RFC determined by the ALJ, see id. Plaintiff may have in mind Dr. Musiker's opinion that Plaintiff would have frequent deficiencies of concentration, persistence or pace, resulting in failure to complete tasks in a timely manner. (R. at 307) This particular opinion was apparently rejected by the ALJ who found that Plaintiff had only a moderate limitation in her ability to maintain attention and concentration. (R. at 30)

It bears noting that although Dr. Musiker indicated by a checkmark on the Psychiatric Review Technique form ("PRTF") that Plaintiff would frequently have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner, (R. at 307), on the mental RFC assessment he

---

movies with her boyfriend," (id.); and identified Plaintiff's functional restrictions, finding that Plaintiff is unable to lift over five pounds with her dominant arm or perform any activities above shoulder level, (id.), and that Plaintiff "also has a moderate limitation in her ability to maintain attention and concentration due to her anxiety and depression," (id.).

Although the ALJ in his decision did not address every item mentioned in each of the Avery factors, Plaintiff was adequately questioned regarding them by the ALJ and Plaintiff's attorney at the January 28, 2002, hearing. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987). The ALJ inquired of Plaintiff as to why she felt that she was not able to do any kind of work, who her doctors were for her shoulder pain as well as with whom she treated for depression. (R. at 417-18) The ALJ questioned Plaintiff about how she spent her time, and Plaintiff testified in detail about her daily activities and recreational activities/hobbies. (R. at 419-22) Plaintiff also discussed her functional limitations. (R. at 422) The ALJ asked Plaintiff about her headaches and any treatment or medication for them. (R. at 423) He also asked Plaintiff about any other medications she took and how often she took them. (R. at 423-24) Plaintiff was questioned by the ALJ whether there was anything other than medication that alleviated her pain. (R. at 424) Additionally, Plaintiff was questioned by her attorney regarding her difficulty concentrating, whether she goes out socially, and if she can lift anything with her right arm. (R. at 425)

indicated that Plaintiff's abilities relating to sustained concentration and pace were not significantly limited in five areas and were only moderately limited in the three other areas, (R. at 309-10). Thus, the ALJ's RFC determination that Plaintiff had "a moderate limitation in her ability to maintain attention and concentration ...," (R. at 30), was not inconsistent with Dr. Musiker's assessment of Plaintiff's mental RFC.

In any case, the ALJ was not required to accept Dr. Musiker's opinion regarding the degree of Plaintiff's impairment of concentration when that assessment was inconsistent with the other evidence in the record. For example, Plaintiff was apparently able to read a few books every two weeks, (R. at 422), which strongly suggests that Dr. Musiker overestimated Plaintiff's concentration difficulties when completing the PRTF. Moreover, even Dr. Musiker believed that Plaintiff was capable of performing simple tasks, (R. at 311), and the jobs which the ALJ determined Plaintiff was capable of performing, i.e., automatic machine operator, small product assembler, and inspector, (R. at 33), were unskilled, (R. at 431), which did not require the performance of complex tasks.

To the extent that Dr. Musiker's evaluation of Plaintiff was internally inconsistent or inconsistent with the other evidence in the record, the ALJ was entitled to resolve that conflict. Furthermore, an ALJ "need not directly address every piece of evidence in the administrative record." Rasmussen-Scholter v. Barnhart, No. Civ.A. 03-11889-DPW, 2004 WL 1932776, at *10 (D. Mass. Aug. 16, 2004)(citing Rodriguez v. Sec'y of Health & Human Servs., 915 F.2d 1557, 1990 WL 152336, at *1 (1st Cir. Sept. 11, 1990)(per curiam)(unpublished table decision)); Lord v. Apfel, 114 F.Supp.2d 3, 13 (D.N.H. 2000)("[T]he First Circuit has held that an ALJ's written decision need not directly address every piece of evidence in the administrative record.")(citing Shaw v.

Sec'y of Health & Human Servs., 25 F.3d 1037, 1994 WL 251000, at *5 (1st Cir. June 9, 1994)(per curiam)(unpublished table decision)); cf. NLRB v. Beverly Enters.-Massachusetts, Inc., 174 F.3d 13, 26 (1st Cir. 1999)(noting, in labor context, that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"). Lastly, to the extent that the ALJ may have been required to specifically mention Dr. Musiker's evaluation, the Court finds such omission to be harmless.

Plaintiff does not identify the "evidence of the plaintiff's on-going psychiatric problems after July 31, 2000 ...," Plaintiff's Mem. at 15, which she states the ALJ failed to mention. This lack of identification creates a burden for the Court because the record is more than 400 pages in length. Accordingly, to the extent that Plaintiff claims error based on the ALJ's alleged failure to discuss her psychiatric problems after July 31, 2000, the Court finds this argument is waived because Plaintiff has not identified the evidence in the record which she contends the ALJ should have discussed. Even if the Court were to overlook this waiver, the Court has reviewed the entire record and finds that the ALJ's discussion of Plaintiff's psychiatric evidence was at least adequate.

Overall, the ALJ's decision reflects considerable effort on his part to review all of the relevant evidence and reach a reasoned result based on that evidence. Moreover, the ALJ's finding regarding credibility is entitled to deference. See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.")(citing DaRosa v. Sec'y of Health & Human Servs., 803

F.2d 24, 26 (1st Cir. 1986)); see also Yongo v. INS, 355 F.2d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); Ortiz, 890 F.2d at 523 ("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.); Suarez v. Sec'y of Health & Human Servs., 740 F.3d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations and to resolve conflicting evidence"). To the extent that the evidence was conflicting, it was the task of the ALJ to resolve such conflicts. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."). The ALJ was not required to accept Plaintiff's claims regarding the degree of limitation resulting from her impairments, and his reasons for finding her not fully credible are supported by substantial evidence. His findings pursuant to Avery and SSR 96-7p were adequate and, to the extent that they were not, the error was harmless. The Court declines to remand this matter for the mere purpose of dotting every "i" and crossing every "t." Cf. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989)(noting that, although an ALJ's opinion may be vulnerable, "[n]o principle of administrative law or common sense requires [a court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Accordingly, Plaintiff's first claim of error is rejected.

**II. The ALJ's hypothetical to the VE was proper, and his decision is supported by substantial evidence in the record.**

The ALJ propounded the following hypothetical to the VE:

> I would like you to consider a hypothetical claimant, similar to the education and work experience as this

> claimant with a residual functional capacity for work, I would describe as being between sedentary and light, or actually, let me say, I find no need to characterize sedentary versus light. I will describe the limitations with the dominant right arm, the claimant is limited to lifting or carrying five pounds, no work above shoulder level, overall weight limit is 15 pounds, she can work up to that level without restrictions on the left, and the claimant is able to stand and/or walk throughout the day consistent with light work, she has occasional, as that term is described in Social Security regulations, occasional periods of, meaning up to one-third of the time, moderate restrictions in maintaining attention and concentration.

(R. at 428) Based on this hypothetical, the VE identified jobs which existed for a person with the stated capabilities, including doctor's assistant, a skilled position at the light exertional level, and admissions clerk, a semi-skilled position at the sedentary level. (R. at 429-430) When asked if there were any unskilled jobs consistent with the hypothetical, the VE identified automatic machine operator, small parts assembly worker, and inspection worker. (R. at 430)

The ALJ further restricted the original hypothetical by adding a frequent or constant reduction in the ability to maintain attention and concentration at a moderate level, (R. at 430-31), to which the VE responded that this limitation would preclude skilled and semi-skilled work, but unskilled work would still be applicable, (R. at 431).[12] Lastly, the ALJ added the need for the hypothetical claimant to rest two to three hours daily. (R. at 431) The VE stated that this necessity would

[12] Plaintiff appears to assert that the VE testified that "moderate limitations in ability to attend and concentrate occurring frequently or constantly would preclude the plaintiff's ability to work." Plaintiff's Mem. at 16 (citing (R. at 431)). However, it is clear from the transcript that the VE initially misunderstood the ALJ's question, (R. at 430), and that, after the ALJ clarified it, the VE responded that such limitation would only preclude skilled and semi-skilled work, (R. at 431).

eliminate all work. (R. at 432)

In support of her second claim of error, Plaintiff repeats her complaint that the ALJ did not mention Dr. Musiker's evaluation or evidence of Plaintiff's psychiatric condition after July 30, 2000. See Plaintiff's Mem at 16. The Court has already addressed these complaints in the prior section, and it is unnecessary to repeat that discussion here. To the extent Plaintiff advances these arguments in support of her contention that the hypothetical question was improper or that the ALJ's decision is not supported by substantial evidence, such arguments are rejected.

Plaintiff next argues that the ALJ should have included Plaintiff's panic attacks and "the impact of other symptoms on her functional abilities," Plaintiff's Mem. at 16, in his hypothetical question to the VE. Plaintiff asserts that the ALJ's description of Plaintiff's "psychologically based limitations (moderate limitation in ability to attend and concentrate [(R. at 428)]) was legally insufficient." Id. The Court finds no error in the ALJ's failure to include in his hypothetical the condition of panic attacks. Plaintiff testified that she went out of the house approximately three times per week, (R. at 421), that she went to the library on a regular basis, (R. at 422), and that she went to the market, (id.). She also testified that she and her boyfriend "usually ... go to the show maybe once a week, maybe sometimes a show." (R. at 425) In addition, Plaintiff's medical records do not document on-going panic attacks on a persistent basis over a period of at least twelve months. The ALJ's determination of the effect of Plaintiff's psychological symptoms (as reflected in his hypothetical to the VE, (R. at 428)), is supported by the mental residual functional capacity assessment of J. Stephen Clifford,

Ph.D., (R. at 340-43).[13]

In short, the Court finds no error in the hypothetical which the ALJ posed to the VE. Moreover, the Court is also constrained to observe that Plaintiff's counsel had the opportunity to cross-examine the VE at the hearing and declined to do so.[14] (R. at 432) If Plaintiff's counsel believed that the ALJ had omitted an essential element from the hypothetical, counsel had the opportunity to correct the omission. Thus, to the extent that Plaintiff contends that the ALJ's hypothetical question did not sufficiently describe psychological limitations, the Court would be justified in finding that Plaintiff waived this issue by not raising it before the ALJ. See Shalala v. Illinois Council on Long Term Care, Inc., 529 U.S. 1, 15, 120 S.Ct. 1084, 1094 (1999)(stating that "§ 405(g) contains the nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court."); Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001)(affirming district court's finding that plaintiff waived claim by making no mention of it to ALJ); see also Sims v. Apfel, 530 U.S. 103, 112, 120 S.Ct. 2080, 2086 (2000)(O'Connor, J., concurring in part)("In most cases, an issue not presented to an administrative decision maker cannot be argued for the first time in federal court.").

Although Plaintiff asserts that "the evidence of record regarding Plaintiff's psychiatric condition amply support[s] constant ongoing psychiatric symptoms which would interfere with the plaintiff's ability to function adequately in a work place,"

---

[13] In fact, it is also arguably supported by Dr. Musiker's mental RFC assessment. See Discussion section I supra at 13-14.

[14] ALJ: Mr. Lepore, you may cross-examine.

ATTY: No question, Your Honor.

(R. at 432)

Plaintiff's Mem. at 16, the Court disagrees. There is substantial evidence in the record which supports the ALJ's determination regarding the effect of Plaintiff's psychiatric symptoms on her ability to work and also his conclusion that there is a significant number of jobs in the national economy which Plaintiff is capable of performing. Accordingly, Plaintiff's second claim of error is rejected.

**Summary**

The ALJ's evaluation of Plaintiff's pain adequately complied with the requirements of Avery and SSR 96-7p. He gave specific reasons for finding Plaintiff less than fully credible, and those reason are supported by the record. In particular, Plaintiff's daily activities are inconsistent with the degree of incapacity she alleges, and none of her physicians have opined that she is physically unable to work. The ALJ's failure to mention the review by consulting psychologist Dr. Musiker was, at most, harmless error, as was his failure to mention the side-effects of Plaintiff's pain medication. Lastly, the hypothetical which the ALJ propounded to the VE was proper, and the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

**Conclusion**

For the reasons stated above, the Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and that any legal error is harmless. Accordingly, I order that Defendant's Motion to Affirm be granted and that Plaintiff's Motion for Summary Judgment be denied.

So ordered.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
February 19, 2008